**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

GREENFIELD WORLD TRADE, INC.,

    Plaintiff,

v.                                                                                          Case No.:

MCLARTY CAPITAL PARTNERS SBIC, L.P.,

    Defendant.
_____/

**COMPLAINT**

Plaintiff, Greenfield World Trade, Inc. ("Greenfield" or "Plaintiff") through undersigned counsel, hereby files this Complaint against McLarty Capital Partners SBIC, L.P. ("McLarty" or "Defendant") seeking a Declaratory Judgment and alternatively, if declaratory relief is denied, seeks damages for Breach of the Warrant Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

**NATURE OF THE ACTION**

This action arises from McLarty's attempt to exercise a Warrant and Put Option in relation to common stock of Greenfield. McLarty, as the Warrant holder, had three options with respect to the Warrant prior to its maturity date: 1) take no action and allow expiration; 2) exercise the right to purchase Greenfield Shares; or 3) exercise and effect its Put Option to cause Greenfield to purchase the acquired shares. McLarty selected the third option to exercise and elect the Put Option by Notice delivered May 4, 2021. In connection therewith the Warrant calls for a good faith joint determination of the fair market value of the shares subject to proper exercise and timing of the Put Option. Failing such determination, pursuant to the express terms of the Warrant, the parties are directed to engage qualified valuation firms to determine the purchase price for the

shares. If the parties' valuations are different, then per the Warrant, the purchase price is deemed to be the midpoint between the two valuations.

McLarty wholly failed to comply with the Warrant's stated procedure to elect to cause Greenfield to purchase the subject shares of Greenfield common stock. Specifically, McLarty: 1) failed to surrender the Warrant; 2) failed to cooperate, confer or engage Greenfield in an effort to reach a joint determination of the share value as required by the Warrant; 3) ignored Greenfield's post-election offer to provide relevant information as to the share value; and 4) delivered a grossly overblown calculation engagement report under the pretext that such report is a fair market valuation of the shares. McLarty's motivation is to cause Greenfield to pay an artificially inflated share price pursuant to the Put Option contained in the Warrant. McLarty plainly failed to follow the exercise instructions and breached its express duty of good faith contained in the Warrant. McLarty also engaged in an arbitrary and unreasonable valuation process intending to manipulate the purchase price. By ignoring the process and presenting a hyper-inflated "valuation" of the shares, and artificially increasing the purchase midpoint, McLarty prevented Greenfield from receiving the benefit of its bargain, and impeded the Warrant's process to determine, a true fair market valuation. The Warrant is now expired.

## THE PARTIES

1.      Plaintiff Greenfield World Trade, Inc., is a corporation organized under the laws of Florida, with its principal place of business in Broward County, Florida.

2.       Defendant McLarty Capital Partners SBIC, L.P., is a limited partnership organized under the laws of Delaware, with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3. This Court has authority to declare the rights of the parties pursuant to 28 U.S.C. §2201.

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) as this action is between parties of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Plaintiff is a Florida corporation and a citizen of Florida.

6. Defendant is a Delaware limited partnership.

7. According to the Warrant executed between the parties in March 2020, Defendant's General Partner is McLarty Capital Partners SBIC, LLC, an Arkansas limited liability company.

8. According to public filings in the United States District Court for the Southern District of New York, Defendant's partners are citizens of New York, Arkansas, Alabama and Connecticut. *See* D.E. #32 Memorandum Opinion & Order, *McLarty Capital Partners SBIC, L.P. v. Brazada, et al,* 18-cv-2599 (S.D.N.Y. June 2018).[1]

9. Plaintiff's public records searches have not revealed any information different from the uncontested allegations regarding the Defendant's citizenship incorporated into the New York District Court's 2018 opinion. Accordingly, Plaintiff and Defendant were citizens of different states in 2018 and based upon information and belief, remain citizens of different states.

---

[1] In the New York action, the defendants Brazda and Mercantel sought removal of a claim initiated by the Defendant in this action, McLarty Capital Partners SBIC, L.P., from New York Supreme Court to the Federal District Court. In their Notice of Removal, the defendants identified the General Partner as the same General Partner that executed the Warrant in this case, McLarty Capital Partners SBIC, LLC, an Arkansas limited liability company with two members, Thomas F. McLarty, III (alleged to be a resident of Arkansas) and Christopher Smith (alleged to be a resident of Connecticut or New York). In its Motion to Remand, McLarty Capital Partners SBIC L.P. did not refute the allegations by defendants as to the citizenship of any of its partners. Rather, the Motion to Remand was based upon a forum selection clause.

10.     This Court has personal jurisdiction over Defendant because Defendant operates an office in Miami, Florida, through use of the tradename, Firmament Group.  As such, Defendant is operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in Florida.

11.     The Court additionally has personal jurisdiction over Defendant because the Warrant was a security in a Florida corporation and the Defendant breached the Warrant in Florida by failing to surrender the Warrant to Plaintiff in Florida and failing to engage in a good faith determination of the fair market value of the Florida entity's shares.

12.     Defendants acts in the state are substantial and not isolated.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (1) Defendant is subject to personal jurisdiction here; and (2) the events or omissions giving rise to the claim occurred here, i.e., Defendant failed to surrender the Warrant to Plaintiff in Florida and breached the Warrant in Florida.

## FACTS

**I.      Warrant to Purchase Common Stock of Greenfield World Trade, Inc.**

14.     On March 25, 2020, Greenfield issued to McLarty, Warrant No. 2A to Purchase 2,654 shares of Common Stock (the "Shares") from Greenfield World Trade, Inc. (the "Warrant"). *See* the Warrant attached hereto as **Exhibit A**[2].

15.     The Warrant expressly states it is governed by and construed according to Delaware law.

---

[2] On the same date, Greenfield World Trade Exports, Inc. ("Exports"), an affiliate of Greenfield, issued to McLarty Warrant No. 2A to purchase 2,654 of Exports' Common Shares.  McLarty similarly sent Exports a Notice of Exercise and Put Notice but has not undertaken to determine jointly with Exports the fair market value of the Shares nor has it delivered a valuation.  As such, it appears McLarty has abandoned it options under Exports Warrant 2A.

16. Pursuant to Section 3 of the Warrant, to properly exercise, McLarty is required to surrender the Warrant and the Notice of Exercise attached to the Warrant at Annex I.

17. Because the Warrant is a negotiable instrument which may be assigned or transferred, the "surrender" of the original Warrant is necessary for a proper exercise of rights thereunder. The requirement and purpose of surrender is expressed throughout the Warrant's terms and conditions[3].

18. At Section 13, the Warrant grants McLarty the right to elect to cause Greenfield to purchase the Shares acquired upon exercise of the Warrant (the "Put Option") during the thirty-day (30) day period, preceding June 1, 2021.  June 1, 2021 is also defined as the Warrant's "Maturity Date".

19. Pursuant to the Put Option, the Purchase Price for the Shares that McLarty elects to "put to" Greenfield, shall be the "fair market value" of said Shares as determined by Section 13(b) of the Warrant.

20. The term "fair market value" is defined in the introductory paragraph of the Warrant:

> "The term **"Fair Market Value"** as used herein shall mean (without duplication) the fair market value of a share of Common Stock, without giving effect to any discounts for a lack of control, illiquidity, lack of marketability or minority status, ***as determined jointly by the Corporation and the Holder in good faith, or failing such a determination, by a Qualified Valuation Firm in accordance with the procedures of Section 13(b)***." (emphasis added).

21. The Warrant expressly requires the parties are to act ***jointly*** to determine the fair market value of the Shares ***in good faith***.

---

[3] For example, Section 5 contemplates that the Warrant itself may be lost, stolen, destroyed and or mutilated.  If such an event were to occur, pursuant to Section 5, and upon reasonably satisfactory proof presented to Greenfield, then a new warrant of like tenor and amount would be delivered to the holder.  Similarly, Section 7(d) of the Warrant provides the Warrant may be transferred by endorsement and delivery in compliance with Federal and State Securities Laws.

22. If the parties fail to jointly determine a fair market value of the Shares, Section 13(b) of the Warrant contains an alternate valuation procedure to establish a fair market value price.

23. Failing a joint determination of fair market value, the alternative mechanism in Section 13(b) provides that McLarty, the holder, may obtain a fair market valuation from a "Qualified Valuation Firm" and deliver said valuation to Greenfield (the "First Valuation"). If Greenfield objects to McLarty's valuation, then Greenfield may obtain its own fair market valuation and deliver it to McLarty (the "Second Valuation"). In the event McLarty objects to the Second Valuation, then the fair market value of the shares shall be the "midpoint" of the First Valuation and the Second Valuation.

24. In pertinent part, Section 13(b) states:

"Unless otherwise agreed to by Holder and the Corporation, within thirty (30) days after the delivery of the Put Notice, the Purchase Price of the Put Shares shall be determined by a Qualified Valuation Firm selected by Holder..…... Within fifteen (15) days after the First Valuation Firm's delivery to the Corporation and Holder of its final written valuation of the Put Shares *("First Valuation"),* either the Corporation or the Holder shall have the opportunity to object to such valuation by the delivery of written notice (the *"First Objection Notice")* to the other…... If either the Corporation or the Holder delivers an Objection Notice, then a second Qualified Valuation Firm (the *"Second Valuation Firm")* selected by the Corporation shall be retained by the Corporation to determine the fair market value of the Put Shares. The Second Valuation Firm shall deliver its final written valuation to the Corporation and Holder within thirty (30) days after the delivery of the First Objection Notice to the Corporation; and, during the five (5) day period immediately following the Second Valuation Firm's delivery of its final written valuation of the Put Shares, either the Corporation or Holder shall have the opportunity to object to such valuation by the delivery of written notice (a *"Second Objection Notice")* to the other. If neither the Corporation nor Holder delivers a Second Objection Notice to the other, then the valuation rendered by the Second Valuation Firm shall be final, binding and conclusive for all purposes hereunder. If either the Corporation or Holder delivers a Second Objection Notice, then the fair market value of the Put Shares shall be the midpoint between the final valuation of the First Valuation Firm and the final valuation of the Second Valuation Firm, which fair market value shall be final, binding and conclusive for all purposes hereunder.

## II.     McLarty's Failed Exercise of the Warrant

25.    On May 6, 2021, Greenfield received from McLarty a document titled Notice of Exercise and Put Notice (the "Put Notice"), dated May 4, 2021, signed by Christopher Smith, the President of McLarty's General Partner.  *See* McLarty's Put Notice attached hereto as **Exhibit B**.

26.    McLarty did not "surrender" the original Warrant along with its mailed Put Notice as required by Section 3 of the Warrant.

27.    To date, McLarty has not surrendered the original Warrant.

28.    On May 7, 2021, through counsel, Greenfield notified McLarty that it received the Put Notice.  Shortly thereafter, in a good faith effort to comply with the express terms of the Warrant, Greenfield offered to provide McLarty a recent company valuation from February 2021.

29.    The February 2021 valuation contained confidential and sensitive financial information of Greenfield.  As expressly contemplated in the Warrant, Greenfield requested that McLarty enter into a confidentiality agreement prior to sharing the information.

30.    Pursuant to Section 14 of the Warrant, McLarty received the right to obtain information related to Greenfield's financial condition, business prospects and corporate affairs for purposes of the Warrant, subject to the parties entering into a confidentiality agreement.

31.    Greenfield promptly prepared a confidentiality agreement in connection with the joint obligation of the parties to determine the fair market value.

32.    On May 26, 2021, counsel for Greenfield sent counsel for McLarty an email containing the aforementioned confidentiality agreement stating: "Once we get the attached signed, we will forward to you the valuation we discussed."

33.    Counsel for McLarty did not respond.

34. On June 3, 2021, counsel for Greenfield sent counsel for McLarty a second email with the confidentiality agreement attempting to follow up on a confidentiality agreement.

35. Again, Counsel for McLarty did not respond. Greenfield's good faith tender was ignored not once, but twice. McLarty took no proactive steps to obtain necessary and essential Greenfield financial information.

36. Instead, in an obvious effort to game the Warrant process, McLarty blatantly disregarded the Warrant's provision requiring the parties first engage in good faith to reach a joint determination of fair market value. On June 4, 2021, without any further efforts or communication, McLarty purported to deliver a "valuation" report dated June 3, 2021, which it emailed to Greenfield on June 4, 2021. *See* June 4, 2021 transmission from McLarty attached hereto as **Exhibit C**.

37. The June 3, 2021 Report from Dixon Hughes Goodman LLP (the "DHG Report") provided by McLarty purports to be a valuation of Greenfield common stock as of May 3, 2021. However, the DHG Report is not a valuation engagement. Rather, the DHG Report is a hastily produced, deeply flawed "calculation engagement" which McLarty seeks to pass off as a valuation of the Shares.

### III. DHG's Sham Valuation Report

38. Based upon well-recognized industry standards, the DHG Report cannot and does not constitute a fair market valuation report. A "calculation engagement" pursuant to the standards referenced in the DHG Report does not include all the procedures required for a valuation engagement. Moreover, the DHG Report does not take into consideration critical valuation factors such as Greenfield's current financial information, current economic, marketplace, industry, or other information or conditions reflective of the Share value. The DHG Report purports to utilize

only the guideline public company method to estimate the value of Greenfield and relying on unsupported conjecture. In short, the DHG Report is comprised of a one-page calculation and not a good faith fair market valuation of the Shares.

39. McLarty's motivation to disregard the good faith requirement as part of the Warrant valuation process and obtain a sham report inflating the Purchase Price of the Shares is obvious. The terms of the Warrant provide that the result of each party obtaining a valuation that the other party objects to, would fix the Purchase Price of the Shares to be the midpoint between the two valuations. Using the DHG Report as a valuation would significantly move the midpoint to an arbitrary and unreasonably inflated value divorced of a relationship to the fair market value of the Shares.

40. McLarty, therefore, chose to ignore its express obligation to engage Greenfield in a good faith valuation; ignored efforts to obtain relevant information that would be necessary to determine a fair market value; and provided a report which fails to meet even the most basic of standards acceptable to measure the Shares' fair market value. Incredibly, the DHG report concluded that Greenfield's common stock had an over-inflated value more than ten times its fair market value when compared to a true fair market valuation.

41. In addition to the foregoing receipt of Greenfield's current financial information, the foundational problem with the DHG Report is that it is a Calculation Engagement, and not a Valuation Engagement. The distinction between these terms is described in Statements on Standards for Valuation Services ("SSVS") at ¶21, one of the standards the DHG Report purports to follow on page 2.

42. SSVS describes the difference:

> "A Valuation Engagement requires more procedures than does the Calculation Engagement. The Valuation Engagement results in a conclusion of value. The calculation of engagement results in a calculated value." *Id*. at ¶21.

43. SSVS further describes a Calculation Engagement"

> "Calculation Engagement. A valuation analyst performs a Calculation Engagement when (1) the valuation analyst and the client agree on the valuation approaches and methods the valuation analyst will use and the extent of procedures the valuation analyst will perform in the process of calculating the value of a subject interest (these procedures will be more limited than those of a Valuation Engagement) and (2) the valuation analyst calculates the value in compliance with the agreement. The valuation analyst expresses the results of these procedures as a calculated value. The calculated value is expressed as a range or as a single amount. <u>A Calculation Engagement does not include all of the procedures required for a Valuation Engagement</u> (see paragraph .46)." *Id*. at ¶21(b). (emphasis added)

44. Notably, a Calculation Engagement should include a statement that it does not include all of the procedures required for a Valuation Engagement, and that had a Valuation Engagement been performed, the results might be different. *Id*. at ¶76. The DHG Report does not appear to contain any such statements.

45. The DHG Report does not mention that its analysis is a Calculation Engagement in the body of the report. The only reference to the scope of the engagement appears in Appendix 1 – Statement of Limiting Conditions.

46. The DHG Report also unequivocally states that it is "solely for tax reporting purposes" and "…not to be relied upon, used, circulated or otherwise referred to, in whole or in part, for any other purpose or to any other party without the express written approval of DHG". *See* DHG Report at pg. 2.

47. If the Warrant holder and Greenfield fail to jointly reach a fair market value of the Shares after a good faith effort, then Section 13(b) of the Warrant states the following:

> "….. the purchase Price of the Put Shares shall be determined by a Qualified Valuation Firm…"

> "A "Qualified Valuation Firm" will mean a third-party valuation firm regularly relied upon by substantial institutional lenders in the ordinary course of their business activities, to value business enterprises…"

> "The two firms that might prepare valuations related to the Warrant Agreement are referred to as the First Valuation Firm and the Second Valuation Firm; the report of the first firm is referred to as First Valuation."

48. The aforementioned language conveys that the Warrant requires a Valuation Engagement and not a Calculation Engagement in order to determine the Purchase Price of the shares.

49. The language of the Warrant specifically uses the word "valuation", and not calculation. Conversely, the DHG Report defines the measurement date as the "Calculation Date" (see Transmittal Letter at pg. 2 of DHG Report), and not the term of art Valuation Date as defined in a valuation analysis. This further emphasizes the inappropriate use of the DHG Report as a valuation engagement which consequently, arrives at a hyper-inflated price for the Shares.

50. The DHG Report does not consider the three generally accepted valuation approaches, including, notably, the income approach. The valuation of an operating company such as Greenfield would be expected to contain an income approach.

51. The DHG Report only uses the guideline public company method and states that it does not use the income approach "due to the lack of available projections for the Company." *See* DHG Report at pg. 4. This statement is inaccurate because McLarty had the right to obtain and was offered information by Greenfield. However, McLarty purposefully chose to proceed without critical and necessary Greenfield information. It is little wonder the resulting calculation engagement reflects an artificial inflated price divorced of market realities.

52. Furthermore, the ASA Business Valuation Standards promulgated by the American Society of Appraisers (the "**ASA Standards**") (also cited in the DHG Report) states that a

valuation should provide an adequate description of the business, including the form of organization, history, products and services, markets and customers, among other things.[4] The DHG Report neglects to address any issue particular to Greenfield. For example, the DHG Report:

- Contains no analysis of historical financial statements or operating history.

- Contains no analysis of the market issues faced by Greenfield.

- Contains no examination of debt increases or the effect of the COVID-19 pandemic.

- Contains no valuation analysis of the economy and Greenfield's industry at the valuation date.

- Provides no consideration of the general economic and industry environment.

- With regard to the application of the guideline public company method, there appears to be no comparison of quantitative and qualitative factors of Greenfield to the guideline public companies.

- DHG chose multiples that approximated the median of the public companies considered.  There is no analysis that Greenfield is a "typical" company in its industry.

### IV. McLarty's Bad Faith, Greenfield's Notice of Objection and Warrant Expiration

53. McLarty intentionally and purposefully chose to disregard the valuation process required under the terms of the Warrant.

54. McLarty made no overture, effort or attempt to reach a joint determination of the fair market value of the Shares with Greenfield.

55. Instead, in an attempt to evade the stated purpose of the bargained for valuation process contained in the Warrant, McLarty, purposely obtained a "calculation" report contrived to

---

[4] ASA Standards, Section V, which contains a more comprehensive list of these factors.

conclude a hyper-inflated value for the Shares. The DHG report is devoid of any professional judgment or connection to Greenfield's financial condition, business prospects or the marketplace. By manipulating the process to reach a valuation of the Shares, McLarty is attempting to intentionally arrive at an arbitrary and unreasonable midpoint value and cause Greenfield to pay an amount that has no true relationship to the Shares' fair market value.

56. McLarty failed to follow the stated process, circumvented the spirit of the bargain, and thwarted the reasonable expectations of the parties.

57. McLarty's exercise and Put Option was defective and in bad faith because: (i) it failed to surrender the original Warrant with its notice of exercise; (ii) failed to engage or attempt in good faith to establish an agreed upon fair market valuation of the shares as required by the Warrant; (iii) purposely disregarded Greenfield efforts to provide information relevant to a determination of fair market value; and (iv) presented Greenfield with a sham Calculation Engagement rather than a fair market valuation in an attempt to hyper-inflate the share price.

58. After McLarty breached its obligation in connection with the exercise and Put Option, the Warrant expired. McLarty's breach of the Warrant and subsequent expiration of the Warrant bars McLarty from exercising any other rights or options under the Warrant. Plaintiff notified McLarty of its failure to follow the process. *See* June 16, 2021 Objection Notice to McLarty attached hereto as **Exhibit D**.

59. Plaintiff has retained the law firm of Lewis Brisbois Bisgaard & Smith LLP to provide legal services to represent his interests in this action and has agreed to pay the firm a reasonable fee for services rendered.

60. All conditions precedent to this action have been performed, occurred, satisfied, waived or excused, or the performance of conditions precedent would be futile.

## COUNT I – Declaratory Judgment

61. Plaintiff repeats and realleges each allegation in paragraphs 1 – 60 as if set forth fully herein.

62. On May 6, 2021, Greenfield received McLarty's Put Notice, dated May 4, 2021. *See* McLarty's Put Notice attached hereto as **Exhibit B**.

63. McLarty did not "surrender" the original Warrant along with its mailed Notice of Exercise as required by Section 3 of the Warrant. To date, McLarty has not surrendered the original Warrant.

64. In pursing the exercise and Put Option, McLarty breached its obligations under the Warrant to engage in a good faith joint effort to determine the Share fair market value.

65. McLarty refused Greenfield's attempts to provide it with the relevant financial information and a fair market valuation that Greenfield had procured only three months prior.

66. On June 4, 2021, McLarty disregarded the Warrant's provision calling for a valuation of Shares at fair market value and proceeded to obtain a Calculation Engagement (which was prepared without the requisite economic, industry, market or financial data) in an effort to hyper-inflate the Greenfield share price.

67. On June 16, 2021, Greenfield notified McLarty that its exercise and Put Option was non-compliant and the Warrant had since expired on the Maturity Date, June 1, 2021.

68. On June 24, 2021, McLarty, through counsel, responded to Greenfield's June 16, 2021 notice of noncompliance and asserted it properly exercised its option and properly obtained a valuation. See June 24, 2021 correspondence attached as **Exhibit E**.

69. An existing and actual controversy exists between the parties regarding the interpretation of the Warrant and the terms and conditions regarding its exercise contained therein.

70. The parties have adverse legal interests of sufficient immediacy.

71. A declaratory judgment will settle the dispute between the parties and afford relief from the uncertainty created by same.

72. Greenfield seeks a declaratory judgment:

    a. That the Warrant expired and is null and void because of McLarty's failure to surrender a wet ink original Warrant prior to the June 1, 2021 Maturity date;

    b. That the Warrant expired and is null and void because McLarty failed to attempt to determine a fair market value share price jointly and in good faith with Greenfield within thirty (30) days of its Put Notice;

    c. That the Warrant expired and is null and void because McLarty failed to obtain a "fair market valuation" by a Qualified Valuation firm within thirty (30) days of its Put Notice;

    d. The terms and conditions of the Warrant, specifically Section 13(b), required McLarty to obtain a Valuation and not a Calculation Engagement;

    e. The DHG Report (Calculation Engagement) does not constitute a "fair market valuation" of the Shares pursuant to Section 13(b) of the Warrant;

    f. The Warrant does not contain a cure period or provision for breach of its terms and that its expiration is absolute, binding and final upon McLarty; and

    g. McLarty is not entitled to the purchase price under the Warrant because of its breach and subsequent expiration of the Warrant.

## COUNT II – Breach of Warrant No. 2A

73. Plaintiff repeats and realleges each allegation in paragraphs 1 – 60 as if set forth fully herein.

74. Greenfield and McLarty are parties to Warrant No. 2A issued to McLarty by Greenfield on March 25, 2020, which gives McLarty the right to purchase 2,654 shares of Greenfield common stock. *See* **Exhibit A**.

75. At all times material hereto, Greenfield performed its obligations pursuant to the Warrant.

76. Pursuant to Section 13, the Warrant grants McLarty a Put Right for a thirty-day (30) day period, starting May 2, 2021 and ending on June 1, 2021 (the "Maturity Date").

77. Pursuant to the Put Right, the purchase price for the shares that McLarty elects to put to Greenfield, shall be the fair market value of said shares as determined by Section 13(b) of the Warrant.

78. The term "fair market value" is defined in the Warrant as a share price "determined jointly by [Greenfield] and [McLarty] in good faith, or failing such a determination, by a Qualified Valuation Firm in accordance with the procedures of Section 13(b).

79. The terms of the Warrant require McLarty and Greenfield to attempt to determine a fair market value of the share price jointly and in good faith up on McLarty's Put Notice. If the parties failed to reach a determination as to the fair market value of the shares, only then was McLarty granted the right to obtain a fair market valuation from a qualified valuation firm pursuant to Section 13(b).

80. Pursuant to Section 3, to exercise the Warrant, McLarty was also required to surrender the original copy of its Warrant and the Notice of Exercise attached to the Warrant at Annex I to Greenfield.

81. McLarty materially breached the terms of the Warrant because: (i) McLarty failed to surrender the original wet ink version of the Warrant upon issuing its Notice of Exercise and

Put Notice to Greenfield; (ii) McLarty did not attempt to jointly determine with Greenfield, in good faith, a fair market value of the shares prior to seeking a fair market valuation from a qualified valuation firm; (iii) McLarty did not obtain a fair market valuation from a qualified valuation firm to determine the share price, rather, McLarty obtained and attempted to use a sham Calculation Engagement that did not constitute a "fair market valuation"; and (iv) McLarty's Calculation Engagement intentionally inflates the Share value causing damages to Greenfield because the Warrant requires the Purchase Price to be the midpoint of competing valuations.

82. McLarty's breach cannot be cured or remedied because the Warrant is now expired as of the Maturity Date.

83. As a direct and proximate result of McLarty's various breaches, Greenfield has suffered and will continue to suffer damages because despite the breach and subsequent expiration of the Warranty, McLarty is seeking a purchase price for the shares that is hyper-inflated and bears no relationship to the fair market value of the shares. Moreover, McLarty's actions in seeking to enforce an unrealistic share purchase price have cast a shadow over Plaintiff's concurrent funding efforts.

**WHEREFORE**, Greenfield prays for judgment and relief as follows:

A. Compensatory damages as a result of McLarty's breaches of the Warrant;

B. Costs of this action; and

C. Granting such other and further relief as this Court may deem just, proper and equitable, including pre-judgment and post-judgment interest.

**COUNT III – Breach of the Implied Covenant of Good Faith and Fair Dealing**

84. Plaintiff repeats and realleges each allegation in paragraphs 1 – 60 as if set forth fully herein.

85. In the event the valuation process is not subject to an express stated obligation of good faith, then Plaintiff, in the alternative, brings this cause of action for breach of implied duty of good faith and fair dealing.

86. The term "fair market value" is defined in the Warrant as a share price "determined jointly by [Greenfield] and [McLarty] in good faith, or failing such a determination, by a Qualified Valuation Firm in accordance with the procedures of Section 13(b).

87. In the event that the valuation procedures in Section 13(b) were triggered, the Warrant contemplates that McLarty would have information rights to properly assess the value of the Shares, by which Greenfield would provide McLarty information related to its financial condition, business prospects and corporate affairs for purposes of the Warrant, subject to entering into a confidentiality agreement as contemplated by Section 14.

88. McLarty did not pursue relevant or necessary information to value the Company and instead elected to commission a calculation in isolation and without context.

89. The implied covenant of good faith and fair dealing is implied in the parties' Warrant Contract.

90. McLarty breached the implied covenant of good faith and fair dealing because:

   (i) McLarty disregarded available information that would be necessary and relevant to a reasonable fair market valuation of the Shares; and
   (ii) Engaging a valuation that is not a business valuation as bargained for by the parties that fails to employ or adhere to common appraisal industry standards for business valuation.

91. As a direct and proximate result of McLarty's aforementioned actions, Greenfield has suffered and will continue to suffer damages.

**WHEREFORE**, Greenfield prays for judgment and relief as follows:

A. Awarding Plaintiff, the costs of this action; and

B.   Granting such other and further relief as this Court may deem just, proper and equitable, including pre-judgment and post-judgment interest.

Respectfully submitted July 15, 2021,

           **LEWIS BRISBOIS BISGAARD & SMITH LLP**
           *Counsel for Plaintiff*
           110 Southeast Sixth Street, Suite 2600
           Fort Lauderdale, Florida 33301
           Telephone:   (954) 728-1280
           Facsimile:   (954) 728-1282
           E-Service: ftlemaildesig@lewisbrisbois.com

           By: *s/Kenneth J. Joyce*
               Kenneth J. Joyce, Esq. (FBN: 986488)
               ken.joyce@lewisbrisbois.com
               Stacy M. Schwartz (FBN: 520411)
               stacy.schwartz@lewisbrisbois.com
               Ishmael A. Green (FBN: 109100)
               ishmael.green@lewisbrisbois.com